# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH DAKOTA
# SOUTHERN DIVISON

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| Plaintiff, | ) | Case Number: CR18-40097 |
| | ) | |
| v. | ) | **MOTION FOR A JUDGMENT OF** |
| | ) | **ACQUITTAL UNDER RULE 29** |
| CORROD PHILLIPS | ) | |
| Defendant. | ) | |

**NOW COMES,** the Defendant, Corrod Phillips, through his attorneys, Manuel De Castro and Gal Pissetzky, and moves this Honorable Court pursuant to Rule 29 of the Federal Rules of Criminal Procedure to vacate the verdicts of guilty, and enter in their place a judgments of acquittal. In support of this Motion, Mr. Phillips states as follows:[1]

## Legal Standard

Under Federal Rule of Criminal Procedure 29, a court must acquit a defendant "of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. A court may acquit a defendant even after the jury has returned a verdict of "guilty." Fed. R. Crim. P. 29(c)(2). The Eighth Circuit has said the standard for a judgment of acquittal is considered with limited latitude and must be granted when "no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v.* Starr, 533 F.3d 985, 997 (8th Cir. 2008); *United States v. Hardin*, 889 F.3d 945, 949 (8th Cir. 2018). Yet, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson v. Virginia*, 433 U.S. 307, 318 (1979). In a federal trial, such an occurrence requires a reversal of the conviction. *Id.*

---

[1] Mr. Phillips is filing the instant motion without the benefit of trial transcripts.

The court must grant a judgement for acquittal when the prosecution has failed to meet its burden and, as a result, the evidence is insufficient to sustain a conviction. *United States v. Marquez*, No. 4:07-cr-00256-JEG, 2008 U.S. Dist. LEXIS 131576, at 12 (S.D. Iowa 2008). The court should review the entire trial record, which may be based on both circumstantial and direct evidence. *United States v. Cross*, NO. CR16-4067-MWB, 2017 U.S. Dist. LECIS 18729, at 8 (N.D. Iowa 2017); *United States v. Tate*, 633 F.3d 624, 628 (8th Cir. 2011). As will be detailed further below, the government's circumstantial evidence fell well short of proof beyond a reasonable doubt.

## **Argument**

At trial, the government presented weak and uncorroborated evidence to prove its case, especially relating to Counts 5 and 6. First, as to Count 5, the government failed to present sufficient evidence to prove that the heroin Mr. Phillips allegedly sold to Shania Hofer ("Hofer") caused Ty Olson's overdose. The government present unreliable evidence that Hofer actually bought heroin from Mr. Phillips on April 23, 2018. The evidence at trial demonstrated that Hofer had *multiple* sources for heroin. It was also shown that Hofer traveled to Minneapolis and Chicago to buy heroin from different sources. Hofer testified that on April 23, 2018, she was high on heroin and during the time frame she bought the heroin for Ty Olson ("Olson"), she did not remember many of the events. The government failed to prove that Mr. Phillips sold Hofer the heroin that she sold to Olson.

Moreover, even if the heroin Olson bought was sold by Mr. Phillips to Hofer, the evidence at trial established that Olson's toxicology report proved that in addition to heroin, Olson also had Benzodiazepine in his body when he overdosed. The government could not prove when Olson ingested the Benzodiazepine, that it was not in his blood, and that it did not

contribute to his overdose. In fact, the evidence established, based on testimony from the EMT and vital sign reports, that Olson's overdose was caused by a combination of drugs, and the heroin was only a contributing factor to the overdose.

Dr. Snell, the government's expert, agreed that Benzodiazepine contributes and increases the probability for an overdose when heroin is also present. Although Dr. Snell claimed that he believed the heroin was the sole cause of the overdose, that opinion is unsupported by the evidence or science. As was established at trial, the only drug available on the field for emergency responders during an overdose is Naloxone. As such, whenever an overdose involves heroin in any combination with other drugs, Naloxone will reverse the effects of the heroin in the body. That is not proof that the heroin was the cause of the overdose, let alone the sole cause.

As the testimony established, all experts and EMT witnesses agreed that if there was a different antidote drug, similar to Naloxone, that treated overdoses that involved Benzodiazepines or Methamphetamines, the same reversal would have occurred because that antidote drug would have treated the Benzodiazepine or Methamphetamine effects. Under Dr. Snell's logic, if Olson was given a Benzodiazepine antidote drug, he would have concluded that Olson's overdose was caused by the Benzodiazepine and not heroin. It's flawed logic, and this Court, nor any trier of fact should follow it blindly.

This Court must look at the evidence, and not Dr. Snell's unsupported conclusion. Simply because Olson woke up after the administration of Naloxone, does not mean that his overdose was not cause by a combination of drugs that included heroin as a contributor. Dr. Snell testified that taking a non-toxic amount of heroin might not cause an overdose; and taking a non-toxic amount of Benzodiazepine might not cause an overdose; but taking both non-toxic amount of heroin along with a non-toxic amount of Benzodiazepine has a much higher probability to cause

an overdose. During an overdose that was cause from combining non-toxic amount of heroin with non-toxic amount of Benzodiazepine, Naloxone would still reverse the heroin effect in the body. That, however, does not mean that the heroin *caused* the overdose –the element the government is required to prove beyond a reasonable doubt.

Importantly, the government's evidence showed that Olson only used a small amount of heroin and that he was a regular heroin user. As such, he had tolerance for heroin and a small amount of heroin would not have caused him to overdose, unless it was supplemented with another drug, i.e. Benzodiazepine. Thus, the overdose was caused by a combination of drugs and the heroin was simply a contributor. The Benzodiazepine in combination with the heroin undeniably caused Olson's serious bodily harm. The administration of Naloxone revived Olson only because it reversed the effects of the heroin in Olson's body. Benzodiazepine has the same affects on one's respiratory and cardiovascular systems as heroin. When Olson received the Naloxone, his suppressed respiratory system became less suppressed because of the antidote drug. At that time, because the combined effect that caused the overdose was stopped, Olson recovered. Olson did not recover because the heroin caused the overdose, he recovered because the heroin, one of the two equal causes, was removed, thereby eliminating the deadly combination. The government never presented evidenced that the Benzodiazepine would have caused the overdose alone or that the heroin would have caused the overdose alone. The government did not prove that the heroin was "the straw that broke the camel's back," because the evidence did not, and could not, establish that element. The evidence only proved that Olson took a combination of drugs and that combination caused his overdose.

The government proved only that Olson overdosed as a result of the ingestion of multiple narcotics, including heroin. *See USA v. Ford*, 750 F.3d 952, 955 (8th Cir. 2014). "In other words,

the government proved only that the heroin was a contributing factor to the [Olson's overdose], not that heroin was a but-for cause of [Olson's overdose]." *Id*. This court must accordingly vacate the jury verdict as to Court 5 and enter a judgement of acquittal.

Next, as to Count 6, the government failed to present sufficient evidence to prove that Mr. Phillips sold heroin to Devlin Tommeraasen on May 16, 2018. The government present unreliable evidence that Tommeraasen actually bought heroin from Mr. Phillips on May 16, 2018. The evidence at trial demonstrated that Tommeraasen had *multiple* sources for heroin. At trial, it was proven that Tommeraasen was a liar that agreed to testify for the government because he wanted the government to file a Rule 35 motion on his behalf. Despite disagreeing that he caused Ms. Groth's deathe, Tommeraasen knew that pleading guilty to Ms. Groth's death and testifying for the government was what he needed to do in order to receive a very favorable and low sentence. He also testified that he was high on methamphetamine when he went to buy heroin with George Clark. Clark, however, did not see who Tommeraasen bought heroin from. In fact, only Tommeraasen testified that the heroin he purchased on May 16, 2018, came from Mr. Phillips. Yet, Tommeraasen's story was a "truth discrepancy", and the government did not prove beyond a reasonable doubt that Tommeraasen purchased heroin from Mr. Phillips that day.

Moreover, even if the heroin Tommeraasen bought was sold by Mr. Phillips, the evidence at trial established that in addition to heroin, Tommeraasen also had methamphetamine in his body when he overdosed. He admitted that at the very least he used methamphetamine late on the night of May 15, 2018. The evidence, however, proved that he used methamphetamine on May 16, 2018 as well. Clark testified that when he saw Tommeraasen on May 16, he was high on methamphetamine. Police reports indicated that he has multiple injection marks on his arm, which indicated multiple drug use. The vital signs showed that his blood pressure and pulse were

high, an indication that Tommeraasen recently used uppers – drugs, such as methamphetamine, that cause hypertension. All these symptoms along with Clark's and officer's observations prove that Tommeraasen used methamphetamine shortly before his overdose, or at the very least that he had methamphetamine in his system when he overdosed. Thus, Tommeraasen's overdose was caused by a combination of drugs, and the heroin was only a contributing factor to the overdose.

Dr. Snell, the government's expert, agreed that methamphetamine contributes and increases the probability for an overdose when heroin is also present. Moreover, Dr. Snell could not conclude that the heroin was the sole cause of the overdose. He only opined that because the Naloxone reversed the heroin effects, Tommeraasen must have overdosed due to the heroin. As was established at trial, however, the only drug available on the field for emergency responders during an overdose is Naloxone. As such, whenever an overdose involves heroin in any combination with other drugs, Naloxone will reverse the effects of the heroin in the body. That is not proof that the heroin was the cause of the overdose, let alone the sole cause.

As the testimony established, all experts and EMT witnesses agreed that if there was a different antidote drug, similar to Naloxone, that treated overdoses that involved Benzodiazepines or Methamphetamines, the same reversal would have occurred because that antidote drug would have treated the Benzodiazepine or Methamphetamine effects. Under Dr. Snell's logic, if Tommerassen was given a methamphetamine antidote drug, he would have concluded that Tommerassen's overdose was caused by the methamphetamine and not heroin. It's flawed logic, and this Court, nor any trier of fact should follow it blindly.

This Court must look at the evidence, and not Dr. Snell's unsupported conclusion. Simply because Tommeraasen woke up after the administration of Naloxone, does not mean that his overdose was not cause by a combination of drugs that included heroin as a contributor. Dr. Snell

testified that taking a non-toxic amount of heroin might not cause an overdose; and taking a non-toxic amount of methamphetamine might not cause an overdose; but taking both non-toxic amount of heroin along with a non-toxic amount of methamphetamine has a much higher probability to cause an overdose. During an overdose that was cause from combining non-toxic amount of heroin with non-toxic amount of methamphetamine, Naloxone would still reverse the heroin effect in the body. That, however, does not mean that the heroin *caused* the overdose –the element the government is required to prove beyond a reasonable doubt.

Importantly, the government's evidence showed that Tommeraasen only used a small amount of heroin and that he was a regular heroin user. Tommeraasen testified that as soon as he started injecting the heroin into his body he nodded off. As such, he had tolerance for heroin and a small amount of heroin would not have caused him to overdose, unless it was supplemented with another drug, i.e. methamphetamine. Thus, the overdose was caused by a combination of drugs and the heroin was simply a contributor.

The methamphetamine in combination with the heroin undeniably caused Tommeraasen's serious bodily harm. The administration of Naloxone revived him only because it reversed the effects of the heroin in his body. Methamphetamine, as an upper drug, causes high blood pressure and high pulse. When Tommeraasen received the Naloxone, his suppressed respiratory system became less suppressed because of the antidote drug. At that time, because the combined effect that caused the overdose was stopped, Tommeraasen recovered. Yet, he did not fully recover, since the methamphetamine was still causing him to suffered from an extreme high blood-pressure for a long period of time.

Tommeraasen did not recover because the heroin caused the overdose, he recovered because the heroin, one of the two equal causes of the overdose, was removed, thereby

eliminating the deadly combination. The government never presented evidenced that the methamphetamine would have caused the overdose alone or that the heroin would have caused the overdose alone. The government did not prove that the heroin was "the straw that broke the camel's back," because the evidence did not, and could not, establish that element. The evidence only proved that Tommeraasen took a combination of drugs and that combination caused his overdose.

The government proved only that Tommeraasen overdosed as a result of the ingestion of multiple narcotics, including heroin. *See USA v. Ford*, 750 F.3d 952, 955 (8th Cir. 2014). "In other words, the government proved only that the heroin was a contributing factor to the [Tommeraasen's overdose], not that heroin was a but-for cause of [Tommeraasen's overdose]." *Id*. This court must accordingly vacate the jury verdict as to Court 6 and enter a judgement of acquittal.

**WHEREFORE**, Mr. Phillips respectfully requests that this Honorable Court enter an Order of a judgement of acquittal on Counts One and Two.

Respectfully submitted,

*/s/ Manuel J. de Castro, Jr.*
Manuel J. de Castro, Jr.
927 E. 8th Street, Suite 104
Sioux Falls, SD 57103
Ph: (605) 251-6787

# CERTIFICATE OF SERVICE

The undersigned, Gal Pissetzky, hereby certifies that in accordance with Fed.R.Crim.P. 49, Fed.R.Civ.P. 5, and the General Order on Electronic Case Filing (ECF), the

**MOTION FORJUDGMENT OF ACQUITTAL UNDER RULE 29**

was served, on December 2, 2019, pursuant to the district court's ECF filers to the following:

Respectfully submitted,

*/s/ Manuel J. de Castro, Jr.*
Manuel J. de Castro, Jr.